(122 So. 819)

## BANKSTON v. LAKEMAN.

## Ex parte BANKSTON.

### (6 Div. 213, 400.)

Supreme Court of Alabama. June 6, 1929.

Williams & Chenault, of Russellville, for appellant and petitioner.

T. B. Russell, of Haleyville, and R. A. Cooner, of Jasper, for appellee.

BOULDIN, J. By these proceedings, James M.·Bankston seeks to review or vacate an order and decree committing him for contempt because of violation of a writ of injunction granted on final hearing of a bill in equity.

No. 213 is an appeal, the record filed here containing much of the record in the original injunction suit, and all the proceedings, including testimony taken, on the hearing for contempt. It was, on April 25, 1929, submitted on motion to dismiss the appeal and on merits.

Thereafter, on April 27th, petition for certiorari was filed in this court, docket No. 400, making reference to and in effect incorporating therein the contents of the record on appeal. The certiorari case was submitted May 16, 1929, and the two cases are considered together.

The rule has been long settled in this state that contempt proceedings are not reviewable by appeal under our statutes. The remedy is by certiorari. Easton v. State, 39 Ala. 551, 87 Am. Dec. 49; Ex parte Dickens, 162 Ala. 272, 277, 50 So. 218; Alabama Power Co. v. Adams, 191 Ala. 54, 67 So. 838; Board of Revenue v. Merrill, 193 Ala. 542, 68 So. 971; Preskitt v. Chandler, 214 Ala. 278, 107 So. 750.

Appellant submits that this rule should be departed from because of the inadequacy of the remedy by common-law certiorari in that it does not bring up the issue on the facts.

In the absence of statute, the rule generally prevailing is the same as ours. 13 C. J. 101. It does not appear that in the course of our judicial history the delicate but essential power to punish for contempt has been so abused as to call for legislative action in· this regard.

In dealing with the violation of injunctions or other orders of court involving a course of conduct continuous in character, the rights of both parties might possibly be better safeguarded by a full review on the facts as well as the law. If so, the remedy is with the Legislature.

Dealing with the case on certiorari, the trial court, in an opinion accompanying the decree adjudging petitioner guilty of contempt, made a full finding of facts and his conclusion thereon. We commend this course. Long ago, in Easton v. State, 39 Ala. 553, 87 Am. Dec. 49, this court approved the words of Chief Justice Ruffin in Ex parte Summers, 27 N. C. 149, saying:

"Therefore, it befits every court, which has a proper tenderness for the rights of the citizen and a due respect to its own character, to state the facts explicitly, not suppressing those on which the person might be entitled to be discharged, more than it would insert others, which did not exist, for the sake of justifying the commitment. A court, which knows its duty, and is not conscious of violating it, will ever be desirous of putting upon the record, or in its process, the truth of the case, especially as thereby a higher court may be able to enlarge a citizen illegally committed or fined. But if the commitment or fine be in a general form for a contempt, all other courts are bound by it, and the party can only free himself, by purging the contempt before the court that has adjudged it."

The statement of facts made by the trial court in the case at bar, being the facts on which our decision must rest, is here set out:

"Prior to and during a part of November, 1924, the defendant, J. M. Bankston, was publishing in the town of Haleyville, Ala., a newspaper known as 'The Haleyville Journal,' and conducting a job-printing business in the town of Haleyville, Ala. In said month of November, 1924, said Bankston sold to the complain-

ant, E. P. Lakeman, his newspaper and job-printing outfits and businesses and the good will thereof, and specifically agreed to not again engage in the newspaper and job-printing businesses in the town of Haleyville, Ala., so long as such businesses were engaged in by the complainant, Lakeman, in Haleyville. Since said sale, said complainant, Lakeman, has continuously published a newspaper, known as 'The Advertiser-Journal,' and conducted a job-printing enterprise at Haleyville, Ala.

"In the month of June, 1926, the defendant, Bankston, in violation of his contract, opened up and conducted a job-printing business, and began the publication of a newspaper at Haleyville, known as 'The Haleyville Spotlight.' Complainant Lakeman brought suit to enjoin Bankston from publishing 'The Spotlight,' and from carrying on his job-printing business, and upon the submission of the cause upon the pleadings and proof, a decree was rendered, holding the publication by Bankston of 'The Spotlight' and his operation of a job-printing business were in violation of his contract, and by the decree Bankston was enjoined and prohibited from carrying on said newspaper and job-printing business, said decree having been rendered on the 21st day of April, 1927. From that decree an appeal was taken by Bankston, but the appeal was abandoned by him, and on the 2d day of December, 1927, the appeal was dismissed by order of the Supreme Court.

"In the meantime, J. M. Bankston executed in favor of his brother, W. Trox Bankston who was then and is now a resident of the state of Georgia, a bill of sale to the physical properties of 'The Spotlight' and job-printing businesses, and these brothers then entered into an arrangement or agreement whereby the defendant was to edit and publish 'The Spotlight' and continue the job-printing business. In doing this work, J. M. Bankston had in his employ E. E. Bradshaw. On the 17th day of December, 1927, complainant filed his petition setting up the facts that J. M. Bankston was, in violation of the decree rendered on the 21st day of April, 1927, publishing 'The Spotlight' and engaging in the job-printing business, and ask that said J. M. Bankston be adjudged guilty of contempt and punished therefor.

"On the hearing of the petition and the evidence offered by the parties, a decree was rendered on the 27th day of January, 1928, holding that the defendant Bankston had violated the decree of April 21, 1927, and he was adjudged to be in contempt of court for such violation, and a fine of $25 was assessed against him, and, in addition thereto, a sentence of imprisonment in the county jail of Winston county for five days was imposed upon him; but by reasons of the representations of the defendant to the effect that his violation of his contract and of the decree of the court was innocent and unintentional, an

order was entered suspending the sentence of imprisonment imposed upon him.

"Within five days after the rendition of the decree of contempt, the defendant's brother, W. Trox Bankston, entered into a contract or lease with E. E. Bradshaw, whereby the latter was to take over the properties belonging to 'The Spotlight' and the job-printing business, and since that time said Bradshaw has carried on the publication of 'The Spotlight' and said job-printing business under said lease or contract. Within a few weeks after this date (the arrangements made between W. Trox Bankston and E. E. Bradshaw), the defendant, J. M. Bankston, began the publication of a newspaper and the operation of a job-printing business at Hackelburg, a town about 15 miles from Haleyville. For a number of weeks past, J. M. Bankston has had his paper, known as 'The Hackelburg Sentinel,' and which he says is 'published' at Hackelburg, printed in 'The Spotlight' office at Haleyville, and the same party who 'publishes' the Spotlight, viz., E. E. Bradshaw, has a contract with J. M. Bankston to 'print' the defendant's Hackelburg paper.

"The petition now before the court, in which it is asked that the court again hold J. M. Bankston guilty of contempt, was filed on the 20th day of June, 1928. The evidence on the hearing of the last-named petition shows that the defendant Bankston resides in Haleyville; that he owns the building in which E. E. Bradshaw publishes 'The Spotlight' and carries on a job-printing business; that Bankston spends a good portion of his time in 'The Spotlight' office, and has been seen at work in said Spotlight office on many occasions since January 27th of this year; that he has taken contracts for job printing, and has had such job-printing work done in 'The Spotlight' office; that much of the printed matter appearing in 'The Hackelburg Sentinel' in its issue of one week also appears in 'The Spotlight' issue of the same week, and that such similar matter is not confined to railroad schedules, bus schedules, mercantile advertisements, and so called 'plate matter,' but also includes personal mentions and references and matters apparently written by the same author. To one who subscribes for and reads carefully the issues of both 'The Spotlight' and 'The Hackelburg Sentinel,' it will readily appear that they are marked resemblances in several respects between the papers.

"The efforts of the defendant, J. M. Bankston, to avoid the violation of the letter of his contract with Lakeman and to avoid the pervisions (provisions) of the decree of this court, appear to have been well studied; but it is my opinion, after a careful consideration of the acts and conduct of J. M. Bankston, as disclosed by the evidence, that he has undoubtedly violated the spirit if not the letter of his contract with Lakeman, and the spirit if not the letter of the decree rendered in this

cause on the 21st day of April, 1927, and that, therefore, he should be adjudged guilty of contempt of court. Ex parte Miller [129 Ala. 130], 30 So. 611 [87 Am. St. Rep. 49]."

We are of opinion the conclusion of the Court was fully justified. Further comment seems unnecessary.

Writ denied. Appeal dismissed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.