## J. T. STARK GRAIN COMPANY ET AL. v. HARRY BROS. COMPANY.

### Decided November 13, 1909.

**1.—Foreign Corporation—Failure to Pay Franchise Tax—Right to Defend Suit.**

A foreign corporation which had paid its franchise tax and had a right to do business in this State at the time a suit was filed against it, would not be deprived of the right to defend the suit by the fact that it had failed to again pay said tax which became due pending the suit.

**2.—Evidence—Expert Testimony—Machinery.**

Although a witness had qualified as an expert of large experience in the construction of steel buildings, tanks, etc., it was error to permit him to testify that a certain steel elevator building, line of piping and storage tanks were constructed and erected in accordance with the terms of a certain contract.

**3.—Same—Statement of Fact as Distinguished from Opinion—Case Distinguished.**

When a witness had testified that the work of erecting a certain building, pipe line and tanks was under his supervision during construction, that he had possession of and was fully acquainted with the contract, agreement and specifications concerning said improvements, and gave the size of the building and tanks; the character of the material used and the manner in which the work was done, which was substantially as called for in the contract, his further testimony that the building, pipe line and tanks were constructed in accordance with the contract, was the statement of a fact and not an opinion or conclusion. Anderson Elec. Light Co. v. Cleburne W., I. & L. Co., 23 Texas Civ. App., 328, distinguished.

**4.—Evidence—Letter—Proof of Execution.**

Where the evidence showed that a certain letter offered in evidence against the defendant was on the letter-head of the defendant; that it was entirely typewritten, but that certain initial letters after the typewritten name of the defendant were the initials of the name of defendant's assistant bookkeeper;

that plaintiff received the letter in due course of mail and acted upon the same by sending a man to defendant's place of business in accordance with a request contained in the letter, the letter was properly admitted .in evidence over the objection that its execution was not sufficiently proved.

### 5.—Parties—Transfer of Claim Pending Suit.

When the claim sued upon is transferred after suit filed and pending the suit, it is not necessary to make the transferee a party; the transferee may make himself a party but it is not necessary that he do so.

### 6.—Appeal—Brief—Grouping Assignments.

When assignments of error embrace distinct and inconsistent propositions of law, they are not entitled to consideration when grouped and presented together in appellant's brief. Rule applied.

### 7.—Charge—No Evidence.

A requested charge submitting an issue not raised by the evidence is properly refused.

### 8.—Contract—Completion of Building—Damages.

Where a contract did not stipulate when the construction of certain tanks should be completed, and there was no evidence that they were not completed within a reasonable time, the court properly refused to instruct the jury that the owner was entitled to damages if the tanks were not completed in a reasonable time.

### 9.—Same—Measure of Damages.

Where a contractor undertook to erect only portions of an elevator plant under contracts executed at different times and for different, separate and distinct portions thereof, the measure of damages for failure to complete his contract within a reasonable time would be the rental value of the building during the delay, and not the profits that the owner might have made during such time.

Appeal from the District Court of Collin County, Texas. Tried below before Hon. J. M. Pearson.

*Garnett & Hughston* and *Abernathy & Abernathy,* for appellants.

*Smith & Wilcox,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—Appellee Harry Bros. Company, a corporation, sued appellants, J. T. Stark Grain Company, J. T. Stark, J. H. Bowman, G. W. Bowman, T. C. Jasper, W. A. Vines, H. W. Coit, John J. Russell and W. R. Norton, in the District Court of Collin. County, Texas, and alleged in substance as follows: That on March 25, 1905, plaintiff and defendant, J. T. Stark Grain Company, entered into a written contract whereby the plaintiff agreed to erect for said defendant six grain storage tanks of the capacity of 15,000 bushels each, near the railroad at Plano, Texas, for the sum of $6,000, and six black steel grain storage tanks of the capacity of 1,000 bushels each in the mill of defendant for the sum of $150 each; all of said tanks to be erected according to certain plans and specifications made a part of said contract; that defendant, Stark Grain Company, was to build foundations for said tanks, and plaintiff was to have sixty days after the completion of said foundations and notice thereof to complete its part of the contract, and if said tanks should buckle or leak within the first twelve months used,

plaintiff was to fix the same free of charge; that on the 19th day of May, 1905, plaintiff and defendant grain company entered into another and additional contract, by the terms of which plaintiff agreed to build a certain line of eight-inch piping and six-inch piping to connect the head of said defendant's elevator with the outside tanks for which said defendant agreed to pay plaintiff sixty-eight cents per foot for the eight-inch pipe and fifty-five cents per foot for the six-inch pipe, and in addition thereto the sum of $45 for erecting and installing the same. It was further alleged that on April 10, 1905, plaintiff contracted in writing to erect for the defendant, Stark Grain Company, a certain steel elevator building according to the plans and specifications made a part of the contract, and to have the same completed and ready for occupancy by June 1, 1905; that said defendant agreed to pay for said building $2600 on the 1st day of June, 1905, provided the same was completed, and if not completed at that time, then as soon as the same was completed and accepted; that said defendant, Stark Grain Company, reserved the right to have a competent architect to examine the building while it was being erected and after same had been completed, and that the judgment of said architect should be final as to whether or not the building was being constructed or had been constructed in a workmanlike manner and of sufficient strength to carry the load that it was supposed to carry, etc.; that plaintiff complied with its contract with reference to said building, and that said defendant had said building inspected and examined by a competent architect, who decided that said building had been constructed according to the contract, and that the judgment of the architect was final; that said defendant, Stark Grain Company, had accepted said building as having been completed according to said contract and had been using and enjoying the benefits thereof; that Stark Grain Company sold all of its assets to J. T. Stark to defraud its creditors; that J. T. Stark assumed the payment of the debt sued for, and mortgaged all the property to W. R. Norton, trustee for J. H. Bowman, G. W. Bowman, W. A. Vines, John J. Russell, H. W. Coit and T. C. Jasper. Plaintiff prayed for judgment against Stark Grain Company and J. T. Stark for the amount of its debt and interest and the foreclosure of lien on the property sold by Stark Grain Company to J. T. Stark, as against all the defendants.

Defendants J. T. Stark Grain Company and J. T. Stark each plead a general denial, and in addition to the general denial said defendants plead, among other things, that the building was not constructed absolutely waterproof; that plaintiff did not use the material contracted for as set out in plaintiff's petition, and used an inferior grade of material, and failed to have the workmanship done in a neat and substantial manner and workmanship manner and in accordance with the best practice for such work. Also that the plaintiff failed to comply with its contract as to painting; that the "I beams" and bracings were not strong enough to stand the load they were designed to carry; that the six black steel storage tanks did not hold 1000 bushels each, but only 900 bushels each; that the top and bottom of the large tanks were not watertight, but leaked, etc.

J. T. Stark adopted all the allegations of the Stark Grain Company not inconsistent with his pleas. Defendant J. T. Stark further answered that he had bought the property involved in this suit, and all claims for damages in favor of Stark Grain Company against plaintiff; that he assumed the payment of any debt due plaintiff by Stark Grain Company and asked judgment against plaintiff for the amount of his damages. Defendants Bowman, Norton, Russell, Vines, Coit and Bowman answered by general demurrers and general denial and that they, except W. R. Norton, held a superior lien to plaintiff's. Plaintiff replied by special exceptions, estoppel and general denial. The case was tried before the court and a jury on September 30, 1908, resulting in a verdict in plaintiff's favor for $4461.25 against Stark Grain Company and J. T. Stark, and for a foreclosure of lien on the property in question against all defendants, and a judgment was duly entered thereon. From this judgment all the defendants appealed.

The contract for the erection of the elevator building, among other things, provided that plaintiff should "furnish and erect in place six-inch by twelve and one-fourth-inch 'T' beams. The beams to be covered on the lower flange with curved corrugated galvanized steel of sufficient strength to carry a safe load of 150 pounds per square foot; that all workmanship should be done in a neat, substantial and workmanlike manner and in accordance with best practice for such work; that the entire framework should be painted with two coats of good metallic paint, one coat to be applied before the material left the shop and one after the building was erected; that both the roof and sides of said building should be absolutely waterproof."

Appellee has filed a motion in this court to dismiss the appeal of the J. T. Stark Grain Company on the ground that it had forfeited its right to do business in this State by failing to pay its franchise tax. If such matter could be presented and urged by an original motion filed in this court, the motion in this case is, we think, without merit. At the time this suit was filed the appellant had not failed to pay its franchise tax, and if it afterwards forfeited its right to do business in this State by failing to pay such tax it would not thereby be deprived of defending this suit. Besides, the undisputed evidence in the record shows that prior to the date of the forfeiture alleged, the appellant grain company had disposed of all of its property in Texas to J. T. Stark, one of its codefendants; that said defendant has assumed the payment of the obligation sued on and that its entire property out of the State had been sold to certain of its stockholders; that all of its business, with the exception of the matters involved in this suit, had been wound up and that it had ceased to do the business for which it was incorporated. The motion is therefore overruled.

The first, second and third assignments of error, as numbered in the brief, raise the same question of law and will be considered together. It is complained in these assignments that the trial court erred in permitting the plaintiff's witness, Oury, to testify that the elevator building, the line of piping, and the six storage tanks of

the capacity of 1000 bushels each were constructed and erected in accordance with the terms of the respective contracts entered into between the parties. It is objected that the testimony was the opinion and conclusion of the witness, involved a mixed question of law and fact about a matter not the subject of expert testimony, and permitted the witness to invade the province of the court and jury. We think there was no material error in the admission of the testimony. The witness qualified as an expert of large experience in the construction of steel buildings, tanks, etc., and was therefore competent to express an opinion in regard to the matter to which his testimony related. But if mistaken in this, then the record shows that the witness testified that the work of erecting the building, tanks and pipe line in question was under his supervision from the time it was begun until it was completed; that while said work was being done he had possession of and was fully acquainted with the contract, agreement and specifications with reference to said improvements. Furthermore, in connection with his testimony that the building, tanks and pipe line were erected in accordance with the contracts and specifications, the witness stated, if not fully, in many respects the size of the elevator building and tanks, etc., the character of the material used and manner in which the work was done, which was substantially as called for in the contract. We therefore regard the testimony complained of as the statement of a fact within the knowledge of the witness and not merely the statement of an opinion or conclusion. This case is distinguishable in the facts from the case of Anderson Electric Light Company v. Cleburne Water, Ice & Light Co., 23 Texas Civ. App., 328, cited by appellants. In that case it does not appear that the witness had qualified and was testifying as an expert, or that the evidence showed, as it does in this case, that he was testifying to *facts* within his own knowledge. But, aside from the foregoing view of the matter, it appears, we think, that if the court erred in admitting the testimony, the error was harmless for the reason that the witness was allowed to make substantially the same statement without objection. He said: "I have been through said elevator building and machinery since the same has been installed and put in operation, and so far as I could see from my knowledge in that line of business everything was working as smoothly and as nicely as could be expected for a new plant. In other words, everything was working perfectly as far as I could see. I will state that in my judgment there is nothing lacking as far as I could see to make the building perfect in every respect for the purpose it was intended for. *And as to its efficiency I am sure that it would come up to the contract and specifications in every respect.* I talked with Mr. Stark several times after the elevator was completed. . . . I heard Mr. Stark make the remark that 'He had the best elevator in the State of Texas.'"

The fifth assignment is as follows: "The court erred in permitting plaintiff to introduce in evidence over the objections of the defendants made thereto at the time, the following written instrument: 'Plano, Texas, 10-17-05. Harry Bros., Dallas, Texas. Gentlemen: We beg to inform you that on yesterday we loaded into one of the

inside tanks constructed for us, one thousand bushels of wheat. The tank buckled at the lugs and twisted out of shape. We consider it dangerous and would be glad to have your Mr. Oury come and look at the tank, and take steps to put it into serviceable condition. We were obliged to empty the tank and throw the load into the big outside tank for fear it would collapse. Please give this your prompt attention. Yours truly, J. T. Stark Grain Company, W. F. M. L."
Appellant objected to the introduction in evidence of this letter on the ground that "it was not proven that the letter had been executed by anyone having authority to make declarations binding upon defendant, and that it was not shown to have been executed by anyone, just simply a letter written with typewriting on it, signed with a typewriter and there is no handwriting on it whatever, and its execution is not proven, and there is nothing to show who wrote it, and it is hearsay and prejudicial." The language, "We beg to inform you that on yesterday we loaded into one of the inside tanks, constructed for us, one thousand bushels of wheat," is the objectionable part of the letter, appellants claiming that the tanks therein referred to were not in accordance with the terms of the contract in that said tanks did not hold one thousand bushels each, and the portion of the letter quoted tended to show an admission on their part that they did. We are of the opinion that the trial · judge's explanation of ·his ruling in admitting in evidence this letter, as contained in the bill of exceptions reserved thereto, shows the execution of the letter by the defendant, the Stark Grain Company. He certifies that the proof shows that the letter was on ·the stationery and letterhead of the defendant, J. T. Stark Grain Company, and that it was entirely in typewriting and that W. F. M. L. were the initial letters of the name of the assistant bookkeeper of the defendant J. T. Stark Grain Company. That it was also shown that the plaintiff received the letter in due course of the United States mail, and that the letter was acted upon by plaintiffs, in that they sent men to Plano to work on the tanks in question. If, however, it can be said the evidence was insufficient to show the execution of the letter by said defendant, its admission was harmless because the presiding judge in further explanation of his ruling in admitting the letter in evidence certifies that the undisputed evidence in the case showed that the tanks did not hold one thousand bushels and the size of the hopper had been changed by agreement, and it was admitted in open court by plaintiff's attorneys that said tank as constructed would not hold one thousand bushels.

We are also of the opinion that the court did not err in refusing to give appellant's special charge, to the effect that inasmuch as the plaintiff had averred in its supplemental petition that the · claim sued on had been transferred to Harry Brothers Manufacturing Company. and that fact was established by the undisputed evidence, to find that said plaintiff take nothing by its suit, and proceed to determine whether said defendants are entitled to recover on their cross-bill. The claim sued on was transferred to the Harry Bros. Manufacturing Company after the institution of this. suit. The original petition was filed by Harry Bros. Company, December 21, 1906, and

they filed an amended second supplemental petition September 23, 1908, in which it was alleged that after the institution of the suit and on, to wit, June 29, 1907, Harry Bros. Manufacturing Company became the owner of the claim and cause of action sued on. This supplemental petition was in reply to the answer of the defendants charging that the plaintiff, Harry Bros. Company, was not the owner of said claim, and it was alleged in said petition that Harry Bros. Company was prosecuting the suit in its name for the use and benefit of Harry Bros. Manufacturing Company. The supplemental petition in the respects mentioned was doubtless unnecessary, and it did not authorize a judgment in favor of the defendants as to the claim sued on. The transfer of the claim having been made during the pendency of the suit, Harry Bros. Company could legally prosecute the suit to final judgment. In such case it is not necessary to make new parties. In Matthews v. Boydstun, 31 S. W., 814, this court said: "The transferee may come in and make himself a party by appropriate pleading, but it is not necessary that he should do so. He takes the transfer subject to the result of the litigation, and the defendant is fully protected by the judgment rendered."

The seventh and eighth assignments of error are grouped by the appellants and presented as one assignment in the brief. The seventh complains that the court erred in refusing to give requested special charge No. 2 to the effect that if the plaintiff, Harry Bros. Company, did not complete the elevator building and tanks within the time specified in the contract or contracts, then the defendant, J. T. Stark Grain Company, would be entitled to recover from the plaintiff the reasonable value of the use of said elevator and said tanks from the time the same should have been completed under said contract and the time the same were actually completed and delivered to defendants, and that they might consider, in determining the value of such use, the purpose for which the parties intended the elevator building and tanks to be used. The eighth complains that the court erred in not giving special charge No. 12, to the effect that if plaintiff, Harry Bros. Company, failed to erect the elevator building and tanks (in question) within the time stipulated in the contracts, defendant would be entitled to recover the reasonable value of the use of such property as it contracted to erect from the time it was bound to erect the same until the same was constructed, and that in determining the reasonable value of such use of said property, to look to all the circumstances of the case, and that if they believed from the evidence that by reasonable expenditure of money (defendants) could and would have used the same as an elevator, then its value as an elevator would be the measure of defendant's damages. As presented, we think the assignments embrace two or more distinct and inconsistent propositions of law and are not entitled to consideration under the rules. We regard the proposition, as is involved in the special charge No. 2, that appellant was entitled to recover the reasonable value of the elevator building and tanks from the time they should have been completed under the written contracts and the time that they were actually completed, and that the jury,

in determining the value of such use, might consider the purpose for which said building and tanks were intended to be used, is materially different from the proposition involved in special charge No. 12, to the effect that appellants were entitled to the reasonable value of the use of said property for such time as they lost by reason of the same not being completed within a reasonable time, and that if by reasonable expenditure of money the property could and would have been used as an elevator, then its value as an elevator would be the measure of appellants' damages.

But if we are mistaken in this, then the answer to the assignment is, that whatever may be the pleadings the concluding part of special charge No. 12 is not a correct statement of the law, and both of the special charges in question are inapplicable to the facts, and misleading. The contract for the building of the tanks referred to in the charges was entered into March 25, 1905, and that for the erection of the steel elevator April 10, 1905. The latter ·contract provided that the elevator shall be completed by the 1st day of June, 1905, but no time was specified in the contract entered into for the erection of the tanks within which said tanks should be completed. Appellant does not point out any evidence, and we have discovered none, showing that these tanks were not finished and ready for use within a reasonable time from the date of the contract; nor do we find any evidence that by "a reasonable expenditure of money" appellants could and would have used the property as an elevator, and that issue and the issue as to whether the tanks were completed within a reasonable time as sought to be submitted by the special charge No. 12, was not raised by the evidence. Therefore charge No. 12 was properly refused; and, as the contract for the erection of the tanks did not stipulate when the tanks should be completed and there was no evidence that they were not completed within a reasonable time, special charge No. 2 should not have been given. The charge of the court upon this phase of the case, limiting appellant's right to recover damages for such time as appellant was deprived of the use of the elevator building after June 1, 1905, and in instructing them that the measure of such damages was the rental value of said building for such time, was, we think, a correct application of the law to the facts and full enough, at least ·in the absence of a correct special charge upon the subject.

Appellant's ninth assignment asserts that the court erred in charging the jury at appellee's request, as follows: "The jury are instructed not to consider any of the evidence introduced before them, which shows or tends to show the profit that defendant J. T. Stark Grain Company could or would have made if said elevator building had been completed within the time required by the contract, in considering the damage which said defendant J. T. Stark by reason of such delay, if any, is entitled to receive." The objections to this charge are, in substance, that it is erroneous, misleading, and upon the weight of the evidence, in that appellants were entitled to the value of the use of the building for the purpose for which it was intended to be used, and that the jury should have been permitted, in estimating their damages, "to consider the profits that could have

been made out of the building;" that in withdrawing from the consideration of the jury all evidence tending to show the profits that could have been made, the court withdrew from their consideration evidence which tended to establish its rental value. We are of the opinion that the rental value of the elevator building, as charged by the court, was the measure of appellant's damages in this case, and not the profits that could have been made during the time they were deprived of its use by the failure of appellee to complete said building within the time agreed upon. To determine the amount of profits which could have been made during such time, it would be necessary to take into consideration the operation of the entire elevator plant, including the outside storage tanks and all inside machinery. The appellee did not undertake to erect for the appellants an elevator plant complete, but only portions of such a plant under contracts executed at different times and for different, separate and distinct portions thereof. The defendant Stark Grain Company constructed the foundation for the outside storage tanks, the concrete foundation for the elevator building, and installed in said building a large amount of machinery necessary for its operation with which appellee had nothing whatever to do. Besides, there is no evidence to show that the appellant Stark Grain Company at the time of the execution of either of the contracts entered into by appellee, had any contracts for the storing or handling of grain in the elevator plant when the same should be completed and that appellee contracted with a knowledge of or reference thereto. It seems clear that the profits were not in the contemplation of the parties when the contracts referred to were entered into.

We are further of the opinion that the charge did not have the effect to mislead the jury or to withdraw from their consideration evidence which was legitimate and proper to be considered by them in arriving at the rental value of the elevator building. There was direct evidence as to such value; and that such and perhaps other evidence upon the question was considered by the jury and the appellants allowed some damages for the breach of the contract as alleged, is manifest from the amount of the verdict rendered in favor of appellee. For it is evident from the record and a simple calculation of the interest on the amount shown to have been unpaid on the contracts declared on, that had not such damages been allowed the verdict in appellee's favor would or should have been for a larger amount.

The clause of the court's charge complained of in the tenth and eleventh assignments was correct as far as it went, and if appellants desired further and fuller instructions upon the subject to which it relates, such charge should have been asked. If there was error in the charge it was not an affirmative error, but one of omission.

The fifteenth assignment is, in effect, that the verdict of the jury is contrary to and not supported by the evidence. In this contention we do not concur. We have carefully considered the evidence and conclude that it is amply sufficient to authorize and sustain the verdict and this assignment is overruled.

Some of the assignments not discussed have been disposed of by

what we have said in discussing others; and those not so disposed of present, in our judgment, no reversible error. The judgment is affirmed.

*Affirmed.*

Writ of error refused.